IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JAMES M. H. JR.,

Claimant,

v.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

Respondent.

No. 18 C 3491

Magistrate Judge Jeffrey T. Gilbert

## MEMORANDUM OPINION AND ORDER

Claimant James M. H. Jr. ("Claimant") seeks review of the final decision of Respondent Nancy A. Berryhill, Acting Commissioner of Social Security ("the Commissioner"), denying Claimant's application for disability insurance under Title II of the Social Security Act and supplemental security income under Title XVI of the Social Security Act. Pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, the parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings, including entry of final judgment. [ECF No. 8.]

Pursuant to Federal Rule of Civil Procedure 56, both Claimant and Respondent moved for summary judgment.[1] [ECF Nos. 14, 22.] For the reasons stated below, Claimant's Motion for Summary Judgment is granted and Respondent's Motion for Summary Judgment is denied. The decision of the Commissioner is reversed, and the case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

---

[1] The Court construes Claimant's memorandum seeking reversal of the Commissioner's decision and remand for additional proceedings as a motion for summary judgment.

# I. PROCEDURAL HISTORY

Claimant filed an application for disability insurance benefits and supplemental security income on January 14, 2015, alleging a disability onset date of January 1, 2014. (R. 15.) After an initial denial on July 2, 2015, and a denial on reconsideration on January 11, 2016, Claimant filed a request for an administrative hearing. (R. 15, 77, 91.) Claimant, represented by counsel, appeared and testified before Administrative Law Judge Edward P. Studzinksi ("the ALJ") on July 14, 2017. R. 31-65. A Vocational Expert also testified. (R. 58-65.)

On December 19, 2017, the ALJ issued a written decision denying Claimant's application for benefits based on a finding that, from his alleged onset date through the date of his hearing, he was not disabled under the Social Security Act. (R. 15-22.) The opinion followed the five-step sequential evaluation process required by Social Security Regulations. 20 C.F.R. § 404.1520. As an initial matter, the ALJ noted Claimant met the insured status requirements of the Social Security Act through June 30, 2019. (R. 17.) At step one, the ALJ found Claimant had not engaged in substantial gainful activity since January 1, 2014. (*Id.*) At step two, the ALJ found Claimant had the severe impairments of osteoarthritis and degenerative disc disease. (*Id.*) At step three, the ALJ found that Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). (R. 17-18.) The ALJ then assessed Claimant's residual functional capacity ("RFC") and concluded Claimant was capable of performing light work as defined in 20 C.F.R. 404.1567(b) with the following limitations:

> The claimant can lift and/or carry up to twenty pounds occasionally and ten pounds frequently, and has no limitations in the total amount of time he is able to sit, stand or walk throughout an eight-hour workday. The claimant needs to alternate his position between sitting, standing, and walking for no more than one or two minutes out of every half hour. While doing so, he would not need to be off task. He could operate foot controls frequently. The claimant can occasionally climb ramps and stairs, and he can occasionally stoop, knee,

2

balance, crouch and crawl, but he can never climb ladders, ropes or scaffolds. He is unable to tolerate excessive vibration, such as driving on unpaved roads. The claimant is limited to working in non-hazardous environments, i.e., no driving at work, operating moving machinery, working at unprotected heights or around exposed flames and unguarded large bodies of water, and he should avoid concentrated exposure to unguarded hazardous machinery. (R. 18.)

Based on this RFC determination and the testimony of the VE, the ALJ determined at step four that Claimant could perform past relevant work as a service support clerk, as previously performed by Claimant and in the national economy. (R. 21-22.) Because of this determination, the ALJ found Claimant was not disabled under the Social Security Act. (R. 22.) The Appeals Council denied Claimant's request for review on March 15, 2018 (R. 1-3), making the ALJ's decision the final decision of the Commissioner and, therefore, reviewable by this Court under 42 U.S.C. § 405(g). *See Haynes v. Baumhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## II. STANDARD OF REVIEW

A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000). Judicial review is limited to determining whether the ALJ's decision is supported by substantial evidence in the record and whether the ALJ applied the correct legal standards in reaching his or her decision. *See Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009). The reviewing court may enter a judgment "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotations omitted). A "mere scintilla" of evidence is not enough. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). Even where there is adequate evidence in the record to support the decision, the findings will not be upheld if the ALJ does not "build an accurate and logical bridge

from the evidence to the conclusion." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008) (internal quotations omitted). In other words, if the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *See Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). Though the standard of review is deferential, a reviewing court must "conduct a critical review of the evidence" before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008) (internal quotations omitted). The reviewing court may not, however, "displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

### III. ANALYSIS

On appeal, Claimant contends that the ALJ made three errors. First, Claimant argues the ALJ improperly discounted the opinions of Claimant's treating physicians. Second, Claimant argues the ALJ improperly assessed Claimant's subjective symptoms statement. Third, Claimant argues the ALJ failed to adequately explain how he arrived at his RFC determination.

### A. The Treating Physicians' Opinions

Claimant contends that the ALJ improperly discounted the opinions of his treating physicians. An ALJ must give controlling weight to a treating physician's opinion if it is both "well-supported" and "not inconsistent with the other substantial evidence" in the case record. 20 C.F.R. § 404.1527(c)(2); *see Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011). Because a treating physician has "greater familiarity with the claimant's condition and circumstances," an ALJ may only discount a treating physician's opinion based on good reasons "supported by substantial evidence in the records." *See Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010); *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003).

4

Even if an ALJ gives good reasons for not giving controlling weight to a treating physician's opinion, the ALJ must decide what weight to give that opinion. *Campbell*, 627 F.3d at 308 (citing 20 C.F.R. § 404.1527(d)(2)). The applicable regulations guide that decision by identifying a number of factors that an ALJ should consider: "the length, nature, and extent of the treatment relationship; frequency of examination; the physician's specialty; the types of tests performed; and the consistency and support for the physician's opinion." *Id.*; *see also* 20 C.F.R. §§ 404.1527(d)(2), 404.927(d)(2); *see also Bauer v. Astrue,* 532 F.3d 606, 608 (7th Cir.2008) (stating that when the treating physician's opinion is not given controlling weight "the checklist comes into play"); *Eakin v. Astrue*, 432 Fed.Appx. 607, 612 (7th Cir. 2011) ("An ALJ who declines to give controlling weight to the opinion of a treating physician must offer good reasons that are sufficiently specific in explaining what weight, if any, she assigned it.") (internal quotes omitted).

### 1. Dr. Spencer

Dr. David Spencer, an orthopedic specialist and one of Claimant's treating physicians, has treated him on numerous occasions since May 2009, when Dr. Spencer performed surgery on him. (R. 814.) On January 8, 2014, Dr. Spencer found Claimant had increasing back pain and chronic foot pain and, after performing an MRI, degeneration of the spine – specifically L1-L2. (R. 600.) Based on these findings, Dr. Spencer decided to take Claimant off of work and recommended lumbar fusion surgery. (R. 600.) On June 17, 2014, Dr. Spencer performed lumbar fusion surgery on Claimant. (R. 543.) Dr. Spencer examined Claimant on June 28, 2014, and noted that Claimant was doing great and that his x-rays looked great. (R. 599.) However, during an August 23, 2014 exam, Dr. Spencer noted that Claimant was "still in significant pain" despite his back healing. (*Id.*)

Also, in November 2014, Dr. Spencer examined Claimant and noted that he was "not really a lot better." (*Id.*)

On November 16, 2015, Dr. Spencer completed a chronic pain residual functional capacity questionnaire regarding Claimant's conditions. (R. 814-16.) Dr. Spencer found Claimant suffered from chronic pain. (R. 814.) Based on Claimant's impairments, Dr. Spencer found he could only sit, stand or walk respectively for less than two hours in an eight-hour working day. (R. 815.) Dr. Spencer also found Claimant could only sit for twenty minutes at a time before needing to get up and stand for ten minutes at a time before needing to sit down. (*Id.*) Dr. Spencer also found he could never stoop or crouch, and would need unscheduled breaks during an eight-hour working shift. (R. 815-16.)

The ALJ assigned "no weight" to Dr. Spencer's opinions, but failed to explain in any detail why he did so, an error necessitating remand. (R. 20-21.) The ALJ discounted Dr. Spencer's January 2014 recommendation because there was no indication the opinion was more than a temporary restriction, it did not meet durational requirements, and it was unclear whether the opinion referred to all work or just past work. (R. 20, 600.) These reasons are insufficient, however, because the ALJ failed to support his analysis with any evidence, substantial or otherwise, in the record. *See Campbell*, 627 F.3d at 306 (an ALJ may only discount a treating physician's opinion based on good reasons "supported by substantial evidence in the records"). The Court cannot accept an unsupported assertion concerning the weight given to a physician's opinion. *See Beardsley v. Colvin*, 758 F.3d 834, 839 (7th Cir. 2014) (noting it was problematic the ALJ did not provide an explanation for preferring one physician's opinion over another).

Similarly, the ALJ did not offer sufficient reasons for assigning "no weight" to the November 2015 chronic pain residual functional capacity questionnaire completed by Dr. Spencer.

(R. 21.) The ALJ stated that there is little support in the record for many of the limitations in the questionnaire. (*Id.*) Yet, the record does, in fact, show functional limitations related to Claimant's back and heel pain. For example, Kelley Hoyt, a physical therapist, noted in an April 2014 examination that Claimant had functional limitations including remaining seated, remaining standing, squatting, and kneeling. (R. 740.) Ms. Hoyt also noted that aggravating factors to Claimant's pain included sitting, standing, walking, going up and down stairs, going from sitting to standing, and bending. (*Id.*) The ALJ did not mention or discuss the April 2014 examination in his analysis. Also, Claimant was examined by a state agency consulting physician on May 26, 2015. (R. 770.) The consulting physician noted he cannot sit or lift much, and the range of motion of the lumbar spine was 50 degrees flexion. (R. 771-72.)

The ALJ also stated that the record showed "very little treatment for pain" after Claimant's June 2014 lumbar surgery. (R. 21.) Yet, in the August 2014 exam, Dr. Spencer noted that Claimant was "still in significant pain" despite his back healing. (R. 599.) Also, in November 2014, Dr. Spencer examined Claimant and noted that he was "not really a lot better." (*Id.*) The ALJ failed to discuss either the August or November 2014 exams indicating the Claimant was in pain and not significantly improving after the June 2014 lumbar surgery. Also, the ALJ mentioned Claimant had tenderness in his soles and lumbar spine during the May 2015 consultative examination, but failed to mention Claimant was taking pain medication, specifically Hydrocodone, at the time of the examination. (R. 771.)

Instead, the ALJ identified evidence in the record that, on the surface, seemingly does not support the opinion of Dr. Spencer in the November 2015 questionnaire. (R. 21.) The ALJ identified a March 2015 physical examination which showed no musculoskeletal edema or tenderness and a "normal" back. (R. 21, 707.) However, this physical examination, conducted by

an emergency department physician, occurred because Claimant was experiencing breathing difficulties, specifically dyspnea. (R. 705.) The physician noted that reason for the visit was "SOB" – shortness of breath. (*Id.*) The notes from the examination indicate that Claimant was wheezing, coughing, and had difficulty catching his breath. (*Id.*) The notes do not indicate that Claimant visited the emergency department for back or heel related pain. (*Id.*) Additionally, the ALJ identified three other physical examinations, in December 2015, February 2016, and August 2016, which showed "essentially normal musculoskeletal and neurological findings." (R. 21.) However, these physical examinations, like the March 2015 examination, were all related to Claimant's breathing difficulties, specifically asthma, allergic rhinitis, and shortness of breath. (R. 833-43.) The three examinations were all conducted at the Suburban Lung Associates. (*Id.*)

The physicians who examined Claimant in March 2015, December 2015, February 2016, and August 2016 examined him for the purpose of addressing his breathing difficulties. (R. 705, 833-43.) None of the reasons for the different examinations related to Claimant's back or heel pain. (R. 705, 833-43.) In contrast, Dr. Spencer is an orthopedic specialist who performed multiple surgeries on Claimant. (R. 797, 543.) Dr. Spencer has treated Claimant since 2009 for issues related to his back and heel pain, and is aware of how his pain has impacted his ability to work. (R. 797, 599.)

Thus, the perceived conflict identified by the ALJ between the March 2015, December 2015, February 2016, and August 2016 physical examinations and Dr. Spencer's opinion in the November 2015 questionnaire is illusory. *See Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009) (finding the perceived conflict between the medical opinions of a neurologist and an orthopedic specialist was illusory because the physicians examined the claimant for entirely different aspects of the claimant's injury). Simply because the emergency department physician and the respiratory

specialists did not note back or heel ailments during examinations focused on Claimant's breathing difficulties does not undercut the opinion of Dr. Spencer, who specializes in examining patients for such ailments and has treated Claimant for many years for back and heel ailments. *See Id.*; (R. 797.) The ALJ's citation of the emergency department physician's and the respiratory specialists' exams as comparative record evidence supposedly contradicting Dr. Spencer's opinion is not substantial evidence that undercuts Dr. Spencer's opinion.

Further, the ALJ did not address the factors listed in 20 C.F.R. § 404.1527 in determining what weight to give Dr. Spencer's opinion. SSR 96-2p. SSR 96-2p states that treating source medical opinions "are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." SSR 96-2p; *see* 20 C.F.R. § 404.1527(c); *Moss*, 555 F.3d at 561. Here, the ALJ did not assign Dr. Spencer's opinion any weight and did not address many of the enumerated factors in 20 C.F.R. § 404.1527. Specifically, the ALJ did not discuss the nature and extent of the treatment relationship, the frequency of examinations, or whether Dr. Spencer had a relevant specialty. Multiple factors favor crediting Dr. Spencer's opinion – his extensive treatment history of Claimant, performing multiples surgeries on Claimant, his orthopedic specialty – and proper consideration of these factors may have caused the ALJ to accord greater weight to Dr. Spencer's opinion. (R. 797, 543); *Campbell*, 627 F.3d at 308 (finding several factors supported affording the treating physician's opinion great weight: the physician had treated the claimant for fifteen months on a monthly basis, the physician was a psychiatrist, and the physician's findings remained relatively consistent throughout the course of treatment). At a minimum, the ALJ should have addressed these factors in some way and articulated how they impacted his opinion. Accordingly, remand is necessary for the ALJ to properly analyze and explain the weight to be afforded to the opinion of Dr. Spencer.

## 2. Dr. Goodman

Dr. Michael Goodman, an internist and one of Claimant's treating physicians, has acted as his primary care provider and treated him since February 2005. (R. 833, 795.) On November 9, 2015, Dr. Goodman completed a chronic pain residual functional capacity questionnaire regarding Claimant's conditions. (R. 795-96.) Dr. Goodman found Claimant suffered from chronic lower back pain and bilateral heel pain. (R. 795.) Dr. Goodman also noted Claimant was experiencing impaired sleep, anxiety, and depression, and had a reduced range of motion in his back. (*Id.*) Based on Claimant's impairments, Dr. Goodman found his experience of pain and other symptoms was severe enough to frequently interfere with the attention and concertation needed to perform simple work tasks. (*Id.*)

The ALJ assigned "little weight" to Dr. Goodman's November 2015 opinion, but failed to explain in any detail why he did so. (R. 20-21.) The ALJ discounted Dr. Goodman's November 2015 opinion because the record contained "little support" for the opinion. (R. 20). The ALJ failed to support his decision to assign little weight to Dr. Goodman's opinion with any evidence, substantial or otherwise, in the record. *See Campbell*, 627 F.3d at 306. Instead, the ALJ stated that the record did not show Claimant had "ongoing difficulties with concentration, attention, or memory." (R. 20.) Whether the record shows Claimant had ongoing difficulties specifically with memory is immaterial, because Dr. Goodman did not address Claimant's memory, or its impact on his ability to perform simple work tasks, in the November 2015 opinion. (R. 795.) Also, Dr. Goodman's opinion only addressed whether Claimant's experience of pain and other symptoms was severe enough to interfere with the attention and concentration needed to of simple work tasks, not Claimant's attention and concentration in general. (*Id.*)

Additionally, as stated above, the record contains abundant evidence of medical examinations regarding Claimant's back pain, such as the August and November 2014 exams, which the ALJ did not mention or discuss. (R. 599.) Likewise, the ALJ did not mention or discuss Claimant taking pain medication, specifically Hydrocodone, throughout 2015. (R. 771, 840.) Instead, the ALJ mentioned that Dr. Goodman treated Claimant for breathing difficulties, as opposed to mental health related concerns, around November 2015. (R. 21.) However, this characterization is not completely accurate. Contrary to the ALJ's characterization, Dr. Goodman was prescribing Claimant Zoloft, an anti-depressant, in July 2015. (R. 775.) Similarly, examinations of Claimant on May 26, 2015 and December 9, 2015 both list Sertraline, an anti-depressant, as a prescribed medication. (R. 771, 840.) Dr. Goodman's November 2015 opinion notes Claimant was experiencing anxiety and depression. (R. 795.) Also, Dr. Spencer's November 2015 opinion, discussed above, notes that Claimant was experiencing depression. (R. 814.) This evidence indicates Dr. Goodman, Claimant's primary care physician, was, in fact, treating Claimant for mental health related concerns close in time to the November 2015 opinion. More importantly, the ALJ's failure to discuss this evidence indicates he did not thoroughly examine the record when deciding to give Dr. Goodman's November 2015 opinion little weight. This further undercuts the ALJ's assessment of Dr. Goodman's opinion.

Further, the ALJ did not address the factors listed in 20 C.F.R. § 404.1527 in determining what weight to give Dr. Goodman's opinion. SSR 96-2p. The ALJ did not discuss the nature and extent of the treatment relationship, the frequency of examinations, or the consistency of Dr. Goodman's opinions. At a minimum, as discussed above, the ALJ should have addressed these factors in some way and articulate how they impacted his opinion.

Finally, the ALJ assigned "great weight" to the non-examining state agency consulting physicians' opinions. (R. 20.) The ALJ assigned these opinions great weight because the consulting physicians "carefully considered" Claimant's history of back and heel pain. (*Id.*) Although an ALJ may give weight to a consulting physician's opinion, here, the ALJ did not explain why the consulting physicians' reviews of Claimant's medical records entitled their opinions to substantially more weight than Dr. Spencer's or Dr. Goodman's opinions, which were based on their extensive treatment histories of Claimant since 2009 and 2005 respectively. *See Beardsley*, 758 F.3d at 839 (noting it was problematic the ALJ did not provide an explanation for preferring one physician's opinion over another); *see also Campbell*, 627 F.3d at 309 (remanding in part because the ALJ did not adequately explain why the consulting physicians were entitled to greater weight than those of the treating physician).

The ALJ thus erred by discounting Dr. Spencer's and Dr. Goodman's opinions without providing a meaningful explanation as to why he did so supported by substantial record evidence. Remand, therefore, is required for further explanation of the weight to be given to each physician's opinion. That is not to say the ALJ must give controlling weight to Dr. Spencer's or Dr. Goodman's opinions on remand. But, without an explanation for discounting and rejecting the treating physicians' opinions, the ALJ has not offered sufficient reasons for the minimal and, as it pertains to Dr. Spencer's November 2015 opinion – nonexistent, weight given to those opinions.

## B. Claimant's Subjective Symptoms Statement

Claimant also argues that the ALJ erred by improperly dismissing his subjective symptoms statement. When evaluating a claimant's subjective symptoms, "an ALJ must consider several factors, including the claimant's daily activities, her level of pain or symptoms, aggravating factors, medication, treatment, and limitations, and justify the finding with specific reasons." *Villano*, 556

F.3d at 562 (citations omitted); *see also* 20 C.F.R. § 404.1529(c); SSR 16-3p. An ALJ also may not discredit a claimant's testimony about his symptoms "solely because there is no objective medical evidence supporting it." *Villano*, 556 F.3d at 562 (citing 20 C.F.R. § 404.1529(c)(2) ); *see Johnson v. Barnhart*, 449 F.3d 804, 806 (7th Cir. 2006) ("The administrative law judge cannot disbelieve [the claimant's] testimony solely because it seems in excess of the 'objective' medical testimony."). Even if a claimant's symptoms are not supported directly by the medical evidence, the ALJ may not ignore circumstantial evidence, medical or lay, which does support claimant's credibility. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539-40 (7th Cir. 2003). SSR 16-3p, like former SSR 96-7p, requires the ALJ to consider "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." SSR 16-3p, at 4.

The Court will uphold an ALJ's subjective symptom evaluation if the ALJ gives specific reasons for that finding, supported by substantial evidence. *Moss*, 555 F.3d at 561. The ALJ's decision "must contain specific reasons for a credibility finding; the ALJ may not simply recite the factors that are described in the regulations." *Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002) (citation omitted). "Without an adequate explanation, neither the applicant nor subsequent reviewers will have a fair sense of how the applicant's testimony is weighed." *Id.*

In this case, the ALJ's assessment of Claimant's allegations regarding his impairments got off to a bad start. The ALJ stated that "the claimant's statements concerning the intensity, persistence and limits effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record...." (R. 20.) The Seventh Circuit routinely has condemned this language as "meaningless boilerplate" and "backwards analysis." *Stark v. Colvin*,

813 F.3d 684, 688 (7th Cir. 2016); *see also Bjornson v. Astrue*, 671 F.3d 640, 645 (7th Cir. 2012) ("The present 'template,' ... is even worse...."); *Martinez v. Astrue*, 630 F.3d 693, 696 (7th Cir. 2011) ("There is no explanation of which of [claimant's] statements are not entirely credible or how credible or noncredible any of them are."); *Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010) ("It is not only boilerplate; it is meaningless boilerplate."). However, an ALJ's use of boilerplate language is not outcome-determinative if the ALJ engages in substantive analysis of the record evidence. *See Pepper v. Colvin*, 712 F.3d 351, 367–68 (7th Cir. 2013). Nevertheless, in this case, the ALJ did not perform a substantive analysis of the record and failed to give specific reasons for discounting Claimant's subjective symptoms statement.

While the ALJ mentioned Claimant's surgeries and physical therapy, the ALJ did not explain why Claimant's extensive treatment history did not support his subjective assessment of his pain. Similarly, the ALJ mentioned that Claimant had undergone treatment with pain management specialists, but the ALJ did not discuss the dosage or effectiveness of Claimant's prescribed pain medication. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001) (finding that if an allegation of pain is not supported by the objective medical record evidence an ALJ must consider the dosage and effectiveness of any pain medications taken by the claimant). The record shows Claimant used a variety of pain medications extensively since his alleged onset date of January 1, 2014. (R. 671, 797, 833.) For example, Dr. Spencer noted, on May 20, 2017, that Claimant was habituated to Norco 10/325 (Hydrocodone), which Dr. Spencer prescribed to Claimant. (R. 797.) Yet, none of Claimant's pain medications were discussed in detail by the ALJ, and the ALJ gave Dr. Spencer's May 20, 2017 note no weight. (R. 21.)

Also, Claimant testified at the administrative hearing that he had taken pain medications n the day of the hearing, July 14, 2017. (R. 50.) The ALJ noted the Claimant's testimony, but stated

14

in his opinion that Claimant "was very well spoken and his memory seemed clear." (R. 20.) The ALJ also stated in his opinion that Claimant "did not appear to be in obvious pain at the hearing." (*Id.*) The Court notes that while an ALJ has a duty to assess the credibility of a claimant's pain assertion, that does not extend to making independent medical findings. *See Rohan v.* Chater, 98 F.3d 966, 970 (7th Cir. 1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings").

Additionally, the ALJ did not assess how Claimant's experience of pain limited his daily activities. Although the ALJ noted that Claimant testified to "very limited daily activities," the ALJ did not describe, in detail, how Claimant was limited in his daily activities by his back or heel pain. *See Moss*, 555 F.3d at 562 (finding the ALJ erred by ignoring the claimant's limitations in performing household activities such as washing dishes and grocery shopping). Claimant testified that he cannot get through a meal without going to lay down in bed and spends about twenty hours a day in bed due to his back and heel pain. (R. 51-52.) He also testified that he uses a shopping cart to brace himself when he goes to the grocery store, and needs to lean on something or stop walking after 15 minutes. (R. 51.) Also, in a Social Security Administration Function Report from April 1, 2015, Claimant stated that he needed multiple rest breaks and physical help to complete household chores. (R. 229.) The ALJ erred by not discussing any of the above limitations of Claimant's daily activities when assessing Claimant's subjective symptoms statement. *See Moss*, 555 F.3d at 562.

Further, the ALJ did not discuss Claimant's work history and how he worked despite undergoing extensive treatment and experiencing back and heel pain. Although an ALJ is not required to consider a claimant's work history, "a 'claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability.'" *Stark*, 813 F.3d

at 689 (quoting *Hill v. Colvin,* 807 F.3d 862, 868 (7th Cir.2015) (quoting *Rivera v. Schweiker,* 717 F.2d 719, 725 (2d Cir.1983))). In this case, Claimant worked from June 2004, when he was diagnosed with foot ailments (bilateral foot pain, bilateral plantar fasciitis, heel spur syndrome, metatarsalgia), and from December 2004, when he was diagnosed with back ailments (degenerative disc disease and lower back pain), until January, 2014. (180-82, 300, 380.) During this nearly ten-year period, Claimant worked continuously despite undergoing extensive treatment for both his foot and back ailments including two separate spinal fusion surgeries in 2005 and 2009, left and right heel surgery in 2009, left and right foot surgery in 2011, a spinal cord stimulator in 2013, as well as physical therapy. (R. 180-82, 330, 349, 355, 646.) Thus, the ALJ erred by failing to discuss Claimant's work record including that he continued to work for years while experiencing significant pain and undergoing numerous foot and back surgeries and other treatment. *See Stark,* 813 F.3d at 689 (finding the ALJ should have acknowledged the claimant's efforts to continue working while experiencing significant pain and undergoing numerous surgeries and other treatments to relieve it).

For these reasons, the Court finds the ALJ did not give specific reasons for his subjective symptom evaluation.

## C. The RFC Determination

Because the Court is remanding on the errors identified above, it need not explore in detail Claimant's arguments regarding the ALJ's RFC determination since that analysis would not change the result in this case. Neither the Commissioner nor Claimant should draw any conclusions, however, from the Court's decision not to address the ALJ's RFC determination. On remand, the Court encourages the ALJ to reevaluate his RFC determination in light of the Court's findings that he erred by discounting Claimant's treating physicians' opinions and subjective

symptoms statement to the extent those findings impact the RFC determination. *See* SSR 96-8p, at 7 ("RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts").

## IV. CONCLUSION

For the reasons discussed in the Court's Memorandum Opinion and Order, Claimant's Motion for Summary Judgment [ECF No. 14] is granted in part, and the Commissioner's Motion for Summary Judgment [ECF No. 22] is denied. The decision of the Commissioner is reversed, and the case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

It is so ordered.

Jeffrey T. Gilbert
United States Magistrate Judge

Dated:    April 24, 2019